Good morning, your honors, and may it please the court. There can be no question that Batson and his progeny prohibit discrimination in the jury selection process. I'm sorry, you're Mr. Morris. I am Darren Morris. Excuse me, your honor. Okay, thanks. Thank you. Appearing on behalf of Mr. Taylor. And there can be no question that Batson and his progeny prohibit discrimination in the jury selection process on account of religion. Although this circuit has never squarely so held, the reasoning in United States v. Brown from our sister circuit, the second, relying on J.E.B. v. Alabama is wholly persuasive. And there's no reason that I can articulate or think of that should compel a different result. As the court in Brown notes, Batson seeks to ensure that jury selection procedures are free from state-sponsored group stereotypes that are rooted in and reflective of historical prejudice. Well, when you're looking at this, so the Supreme Court recently, on March of 2011, in Felkner v. Jackson, stated the trial court's determination that a recusal was for a neutral reason is entitled to great deference. How do you overcome the deference in this case? Well, your honor, with regard to the issue of the prosecutor's stated basis for excusing juror number 18 on the, that issue is reviewed by this court under a de novo standard. Every court that has addressed the issue has employed, since Batson, has employed the same basic three-step process. Is there a prima facie case, which is moot at this point, but is also those findings are entitled to deference? Are the government's stated reasons neutral, which is reviewed by this court under a de novo standard, because it doesn't involve any particular fact-finding? And then the final step, did the government purposefully discriminate? So the- Well, it could involve whether you believe the prosecutor. And that's the third step. But you don't get to the third step if the prosecutor's stated reason is not facially neutral. And another thing that Batson is designed to ensure is that we don't use unconstitutional proxies in jury selection for juror competence and impartiality. And what the prosecutor used here, excusing juror number 18 for her discomfort, and I put that in quotation marks because juror number 18 never actually said that she was uncomfortable, that is an unconstitutional proxy that ties completely and inseparably into her identity as a minority religious and ethnic Muslim. Do we review the question of whether or not there was a neutral explanation? Do we review that de novo, or do we owe deference on that? This court does not owe deference at the second step to whether the explanation itself was neutral. This court can see just as well as the trial court from the plain language of what was stated once the reasons had been offered, whether that reasoning does in fact employ neutral considerations. And the reasoning in this case did not. First, I think the record was completely clear that juror number 18 was both a religious and ethnic Muslim. She bore the last name Al-Shazly. She wore a headscarf that both the judge and the defense attorney indicated that they believed that was a headscarf that was related to an observant religious practice. Although her middle name was Thornhill, she was obviously either married to, she either got the name Al-Shazly through marriage or through mixed ancestry, her father's last name being Al-Shazly. And obviously district courts are not going to, there's a level of inquiry that the district courts are going to put on their juror forms, last name, employment, but we're not going to ask the district courts to get into that level of detail. But from the information that was apparent, she's clearly a Muslim woman living in America. The district court found a prima facie case had been established as to both jurors numbers 23 and 18. That finding is entitled to deference. Although the court did state some language saying I'm doing this for the sake of convenience, which is a little odd, it also said there is enough there for me to make this finding. And that's on pages, that's on ER 8 and 9. So it found enough to go forward and to compel the reasons from the government. And what the government offered with regard to juror number 18 was that it was excusing her based on her discomfort. Again, juror 18 never said she was uncomfortable. She never said anything that touched on her qualifications as a juror. She said she probably would, in response to that question, they go around and ask everybody, would you feel different being judged by people that didn't look or weren't like you? And most people said no, wouldn't be a problem. She said she would probably be uncomfortable. She essentially said that if she were in Mr. Taylor's shoes sitting there and she were being judged by people who were entirely different than herself, then in that circumstance she would probably feel uncomfortable, which doesn't touch on her qualifications in any sense. But then if given that answer, everyone's qualified to be a juror in the sense of, you know, do they bring biases or would they feel uncomfortable? Isn't it then the prosecutor's decision, well, do I want to leave that person on the jury? And why isn't the prosecutor's statement sufficient? Why is it a religious-based strike that the prosecutor made? Well, the prosecutor's statement has a reason, but what's wrong about it is that there's no difference between what the prosecutor said and simply excusing somebody because they are Muslim. No, no, no, that's not right. That's your argument, but that's not really what the law says. I mean, it was a little more complicated. It was what you said, it was what they said, and then the court determining whether there was a race-neutral reason and whether it was protectual. Well, what I'm relying on there, Your Honor, is the Bishop case and this issue about proxies. And this is a proxy for excusing juror number 18 on account of her minority status, her status as a Muslim woman. Okay, but unlike juror number 3, who was not concerned with that. I mean, the government asserted that it was properly concerned about her response in face of the fact that the defense had already highlighted that the defendant had darker skin than all the other panel members. Unlike juror number 3, who was not concerned about differences, juror number 18 suggested a juror who would be swayed by sympathies unrelated to the evidence before her. I mean, you know, we don't get to know people on peremptories. I mean, probably everything about jury selection is a proxy in a way, but you just can't use improper proxies. But if people indicate an indecisiveness and something being uncomfortable, that's what the court's got to look at. Is it, was she, did the court, you know, the court didn't seem to believe what, I mean, your point was you said, hey, she, her religion and ethnic, the court didn't think her religion and ethnic ancestry were as clear as you did, right? The court? Yeah, did the court think it was as clear as you did? The court clearly thought she was a religious, the court initially offered that she was a religious Jew. Right, and there was that weird colloquy about, well, maybe Orthodox Jews wear that type of headdress. And then someone said, no, probably not. And then, well, I think she's Muslim because of her name. And everyone thought her name was Ms. Lynn at the time. Her name actually is Al-Shazly. But, I mean, let's be honest. Everybody thought, well, she probably is some kind of religious reason she's wearing this headscarf. Right, and her last name is Al-Shazly. And we know from that that she was a Muslim woman. When did that come out, that they knew that? Well, the defense attorney said that he did not think she was a religious Jew because he had some familiarity with that and offered that she was a religious Muslim. The district court, erroneously thinking that her last name was Lynn, tying that name incorrectly together with her headscarf, said, okay, she's probably a Muslim. Her actual name is actually more clearly Muslim. But allowing the government to excuse a juror who would feel this type of, who hypothetically would feel this kind of uncomfortableness, is a proxy because every person. It goes right to the heart of if you're going to ask people to find someone guilty and they say they're uncomfortable judging someone that doesn't look like them, why isn't that, you know, there's nothing in the law that says you treat someone differently if they look like, you know, why isn't her statement right there, I mean, why isn't she making a racist statement? She's not saying that she would feel uncomfortable judging anyone. What she said was that she would feel uncomfortable being judged by people who are entirely different from herself, just as anyone would feel uncomfortable in a room where they are the only white person or a black person would feel uncomfortable. Well, we don't know that. I mean, that can be, if you're talking about proxies, that's a proxy for her state of mind. If she feels that she'd be uncomfortable if she were the defendant, it also means that she's uncomfortable in that. Other people weren't troubled in the same way. I would earnestly invite the court to picture themselves seated in the chair of a defendant on trial being judged by people who are entirely different from themselves, either racially or religiously, and ask yourselves whether you would not feel some initial discomfort with that as part of your human nature, and whether asking people not to feel that discomfort and saying that they can't and mandating some sort of colorblind mentality, that that is somehow a really unusual approach. What if the person says they would be uncomfortable finding someone guilty? That's not what she's saying. That's a juror that you would love. But would the prosecutors have to, you know, I don't feel comfortable finding people guilty. It doesn't mean I wouldn't, but I don't feel comfortable. So, you know, anytime that someone's uncomfortable, it makes lawyers nervous. Well, I think this goes to the real difference between this case and FIKE. And in FIKE, the jurors said that they had some distrust of the U.S. justice system. And if the jurors said they would be uncomfortable finding someone guilty, then obviously they wouldn't last very long. My question here really goes to the religious aspect of it. She's made a statement that really isn't related to a religious foundation. And so the prosecutor looks and says, you know, well, given that state of mind, all things being equal, I'd rather have somebody else on the jury. And she wears a headscarf. All of a sudden that becomes a religious strike. That's where I'm having some trouble making… Well, the entire conversation happens in the context of race and discrimination and minorities. Then it doesn't actually matter what's in her mind when she's saying it. What matters is what's in the prosecutor's mind when he's exercising the peremptory. And it's clear from the discussion on the record that everyone is talking… Well, if she were a white woman sitting in the jury and you had a dark-skinned person as the defendant, and she says, yeah, I feel in his shoes a little bit uncomfortable, and she were struck, why wouldn't that be a racial strike because she's white? If she were white, simply white, and she said the same thing, that she would feel uncomfortable… Yeah, why wouldn't that be a racial strike? I think if anyone, white or blacks, acknowledges the basic truth that they would feel some human nature-level discomfort being judged by a whole group of people who are entirely different from themselves, that's inseparable from their identity. That would not be a problem. I would like to move… That wouldn't be a problem. So would the white person, would that be a fair Batson challenge then? If a white person said, if I were seated in the defendant's chair being tried by people who are entirely different from myself and the prosecutor struck her and offered that, explicitly offered that as the reason, then I think issues of race would be implicated. Now, I would like to address what happened… Really, the question was wrong because no matter how anybody answered it, everyone on that jury was either, potential jury pool was either black, white, or of some other ethnic or color, and all of them had a religion and all of them had something else, then nobody could answer that question and not be a Batson challenge, is the way you're describing it. No, I'm saying that… So she puts on a headscarf then, now that makes her a religious person? No, I'm saying the same rule applies for everybody. I'm saying no matter who gave juror number 18's answer, white, Hispanic, black, if all they're saying is that I would probably feel uncomfortable being judged by people who are entirely different from myself, that is… She was honest and now it turns into a religious strike. She was honest and the prosecutor penalized her for feeling like a Muslim. That's exactly what happened. And then with juror number 23, the prosecutor's reason… He penalized her for feeling like a Muslim. Basically, he felt like, well, she's saying if you don't have a jury that looks exactly like you and everybody out there has some characteristics, racial characteristics, then they wouldn't feel comfortable having a jury make that determination. So I'm just having some trouble with the religious link here. And I guess you're just saying because she is Muslim and she made that statement, that is sufficient. Well, it's obvious what her cultural and religious identity is, yes. And that's obvious from the record. And the prosecutor's contextual reasons with regard to the other juror number 23 inform the analysis. You look to the record as a whole. I would briefly like… Is there any deference entitled to the judge in making the contextual determination? The judge did make the contextual determination, said that the prosecutor's reasons weren't plausible and the district court's ruling was, frankly, it was illogical. It found that the government's reasons were not plausible. It had already found a prima facie case. Hearing nothing but pretext, it then backed off from its initial findings and said, well, because another Southeast Asian juror sat, that's fine. We have nothing to worry about. I'm just curious, since you say there's no deference anywhere, what did Felkner v. Jackson say? Felkner v. the recent… You said that your Honor was describing… Where it does say that the trial court's entitled to a certain amount of deference. Where does that deference come in? Because every place I've asked you, is the court entitled to any deference? And you said, no, no, no, de novo, de novo, de novo. That's not what I said, Your Honor. I said at Stages 1 and 3 of the analysis, the court is entitled to deference. At Stage 2, it's not. The court is clearly entitled to deference when finding whether a prima facie case is made. The court is also entitled to deference when it decides whether there was, in fact, purposeful discrimination. Now, when the district court says, government, I'm looking at you, I'm seeing your conduct in this trial, what you're saying is not plausible, that is entitled to deference. And when the district court hears nothing but pretext, finds pretext, and still refuses to infer discrimination, then that's reviewed for clear error. But that is clear error. It is clear error to hear nothing but pretext and say that simply because one other Southeast Asian juror was seated, that that somehow washes the whole thing out. United States v. Turner says, absolutely not. That is not the correct rule. And that was a case where the government had, in fact, seated four African-American jurors while excusing five of them. And Turner held that the government's explanation, when the government's explanation is not supported by the record, that impaneling other minority jurors does not salvage a discredited explanation. The explanation was properly discredited here.  Thank you, Your Honor. May it please the Court, my name is Helen Bruner. I'm here to represent the United States in this matter. Let me start with the question of standards of review, because I think the question here with respect to Step 2, what the Court needed to find, quite simply, is whether there are, of the prosecutor's explanation, and that that is reviewed de novo by this Court. But Perkett v. Elm, the Supreme Court's case, makes clear that that's really the only issue. And then we move on to Step 3, where the Court is entitled to deference, and the Step 3 findings are reviewed by this Court for clear error. With respect to Juror Number 18, I think as to Step 2, the District Court, this Court certainly can find that the prosecutor's explanation here was facially valid. The answer that Juror Number 18 gave showed that she was asked whether she would feel uncomfortable being judged by people who did not look like her. Two jurors were asked this question. Juror Number 3, who said she was not uncomfortable and was ultimately struck by the defense, and Juror Number 18, who said she was uncomfortable. And I think the nature of that question, the whole point of that question, is to show, to determine who's going to be more sympathetic to a defendant, who at the, before asking that question, defense counsel also points out that Mr. Taylor had darker skin than anyone else in the courtroom. I think one could infer from that that he's probably the only African American in the courtroom, because when the discussion is who is a minority on the jury panel, there's reference to the three Southeast Asians, Juror Number 6, Juror Number 23, and Juror Number 27, and then Juror Number 18, who is presumed to be Muslim. I don't know that, I don't know that it was ever really firmly established. Certainly her last name would suggest she's either by marriage or birth, associated with a last name that's Middle Eastern, and she was clearly wearing a headscarf. So I think that the assumption was made there. But I don't think that when you look at this, and you look at the answer that is given, and the reasons, the prosecutor also gave a reason related to demeanor, pointed to the fact that as she was giving that answer to defense counsel, she was smiling at defense counsel. And while that is, after all, part of the reason for preemptory strikes, it got feeling that this is a person who is going to be much more sympathetic to the defense cause. I think that's certainly where the district court came out, and that, at Step 3, is entitled to deference. Turning to Juror 23, I think the difficulty with Juror 23 is a bit of confusion with respect to the transcript. I would respectfully state that it's probably not the best transcript I've ever seen, and it leads to the confusion that we have here, because what the court says with respect to Juror Number 23 at Step 3 is that counsel, I'm going to deny the Batson challenge. The court then refers to the fact that there are other Southeast Asians who were not taken off the panel, then says the fact that 23 didn't say anything, I'm not so sure that makes a difference, but I would agree that her participation in the voir dire process leaves open the possibility that she's simply a person who would be carried along with the tide one way or the other, as opposed to having a strong opinion. And that then precedes the statement as the transcript now reads, and so I'm going to deny that as a plausible reason, but that sentence doesn't follow from what the court said before, that it is a plausible reason that she seems to be carried along. And then the court finds that the moving party here, the defendant, has not met the burden of proving purposeful discrimination. So I think that the court's reasoning here is, in fact, that not just based on the fact that she was the only Southeast Asian struck by the prosecutor, but that the reasons that she was, her demeanor, her making herself small as the prosecutor described it, sort of trying to shrink down so she wouldn't be chosen, if you will, is something that would, that the court saw as a legitimate reason, and that's certainly entitled to deference. There... Do you want to touch briefly on any of the other issues? Pardon me, Your Honor? Do you want to touch briefly on any of the other issues? Your Honor, we've briefed them at length in our brief. I'd be certainly happy to answer any questions the court might have concerning either of those issues, but if not, then I will ask this court to affirm. Thank you. Are there any questions of the appellant's counsel? No. All right, thank you. The matter just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan